UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICKI HEBERT, an individual,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>BARNES & NOBLE, INC.,<br><br>　　　　　　　　　　Defendant. | Case No.: 19-cv-591-BEN (JLB)<br><br>**ORDER REMANDING TO THE SUPERIOR COURT FOR THE COUNTY OF SAN DIEGO** |

Now before the Court is Defendant Barnes & Noble, Inc.'s Motion for Summary Judgment. The Court finds this matter suitable for determination without oral argument. *See* Fed. R. Civ. P. 78 and Civil LR 7.1(d)(1). For the reasons set forth below, the case is remanded to the Superior Court for the County of San Diego.

## BACKGROUND

This case was originally filed in the Superior Court for the County of San Diego as a putative class action. Barnes & Noble removed the case to this Court. No class has been certified and it remains an individual action. The action asserts a claim for relief based upon an employer's technical violation of the federal Fair Credit Reporting Act ("FCRA"), specifically, the stand-alone notice requirement imposed by 15 U.S.C. Section 1681b(b)(2)(A)(i). When an employer considers a person applying for a job, and the

employer wishes to obtain a credit report about the job applicant, the FCRA requires a disclosure be given on a separate page with nothing else on the page.[1]

According to the undisputed evidence, Hebert applied for a job with Barnes & Noble in the fall of 2018. Barnes & Noble's FCRA disclosure to Hebert, and 27,000 other job applicants between 2016 and 2018, contained additional language on the disclosure page. Both parties agree the additional language constituted a technical violation of the stand-alone provision of the FCRA. Hebert claims the violation was willful.[2] Barnes & Noble claims it was a simple mistake borne of an effort to comply with the FCRA. The additional language (which should not appear on the required disclosure form) does not appear to benefit Barnes & Noble in any way. Rather, the additional language is a remnant or an artifact of an editing exchange between Barnes & Noble's lawyer and its credit reporting agency provider. Hebert was eventually offered a job by Barnes & Noble, which she accepted. Neither Hebert, nor any of the other 27,000 persons who applied for a job and were given the defective FCRA disclosure, complained to Barnes & Noble about the defective disclosure.

Barnes & Noble has moved for summary judgment. Summary judgment is appropriate when there is no genuine issue of material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ARTICLE III STANDING

The first consideration is whether Hebert has standing because it "is the threshold issue of any federal action…." *Local Nos. 175 & 505 Pension Tr. v. Anchor Cap.*, 498

---

[1] *See Walker v. Fred Meyer, Inc.*, 953 F.3d 1082, 1084 (9th Cir. 2020).
[2] For an accidental or careless violation of the stand-alone provision, a plaintiff must prove her damages. For a willful violation, statutory damages between $100 and $1,000 are recoverable. Plaintiff is seeking statutory damages here.

F.3d 920, 923 (9th Cir. 2007). Barnes & Noble has not challenged Hebert's standing. But it does not matter. A federal court has an independent obligation to satisfy itself that a plaintiff has standing at all stages of litigation. *Sierra Club v. Trump*, 2020 WL 3478900 at *6 & n.9 (9th Cir. June 26, 2020) ("The Federal Defendants do not challenge Sierra Club's Article III standing in these appeals. However, 'the court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties.' *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).").

Litigants "who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirements imposed by Article III … by alleging an actual case or controversy." *City of L.A. v. Lyons*, 461 U.S. 95, 101 (1983). Three elements must be present for a plaintiff to have standing: (1) the plaintiff must have "suffered an injury in fact;" (2) there must be a "causal connection between the injury and the conduct complained of;" and (3) it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In terms of the FCRA, the Supreme Court notes,

> [A plaintiff] cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm.

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016). Here, Hebert's allegation of injury is exceedingly thin and her evidence of injury is ephemeral. In fact, Hebert has failed to satisfy the demands of Article III in precisely the manner *Spokeo* described: she alleges a bare FCRA procedural violation. But she alleges no actual harm. More importantly, since this is a motion for summary judgment, at this stage of proceedings she must present her evidence of harm to support her claim of Article III standing. "Of course,

standing 'must be supported at each stage of the litigation in the same manner as any other essential element of the case,' and what suffices at the Rule 12(b)(6) stage may not suffice at later stages of the proceedings when the facts are tested." *Syed v. M-I*, 853 F.3d 492, n.4 (9th Cir. 2017) (citations omitted). This she has not done.

> "In *Syed*, the Court could rely on allegations in the complaint in the context of a motion to dismiss; however, at the summary judgment stage, Plaintiffs must produce evidence demonstrating standing. These Plaintiffs have not. Plaintiffs did not suffer any concrete harm because of the alleged FCRA informational violation. Plaintiffs have not shown that they were confused by the third-party liability waiver or would not have signed the FCRA Disclosure Forms had they not contained that waiver language."

*Ruiz v. Shamrock Foods Company*, 2018 WL 5099509 *6 (C.D. Cal. 2018). S*yed* was a case of first impression. In it, the Ninth Circuit interpreted *Spokeo* and affirmed the principle that bare technical violations of the FCRA may not result in a concrete injury. Nevertheless, the Ninth Circuit held that a complaint could survive a motion to dismiss if the Court could infer a concrete injury from the technical violation. To do so at the pleading stage, a plaintiff would have to allege: (1) that the superfluous language on the FCRA disclosure actually confused the plaintiff; and (2) that the plaintiff would have declined to sign the authorization for the employer to obtain his or her credit report. The complaint in that case said, "Syed was *confused* by the inclusion of the liability waiver with the disclosure and *would not have signed it* had it contained a sufficiently clear disclosure, as required in the statute." *Id.* at 499 (emphasis added). The Ninth Circuit concluded that with these additional allegations beyond the bare claim of a technical violation, "Syed did allege a concrete injury and has Article III standing to bring this lawsuit." *Id.* at 499-500 (citations omitted).

In contrast, Hebert *did not allege* that she was confused or that she would not have signed the authorization for an employment credit report. And she *does not identify evidence* of her confusion or evidence that she would have declined to authorize a report had she clearly understood the required FCRA disclosure. In Plaintiff's Response to

Defendant's Separate Statement In Opposition to Defendant's Motion for Summary Judgment ("P's Response") (Dot. 33-3 filed 12-30-19), she cites only a smattering of facts concerning her experiences. She says she applied to Barnes & Noble in September 2018. P's Response at 1. Before obtaining her background report, she was sent an email with a link where she could view the FCRA disclosure form and electronically authorize the background report. P's Response at 3. After viewing the FCRA disclosure, Hebert did authorize Barnes & Noble to obtain a background report. P's Response at 4. Hebert passed the background check and began working for Barnes & Noble. P's Response at 5. Among the rest of the 43 evidentiary responses there is nothing concerning Hebert.

      There is no evidence identified that states or suggests that she was *confused* from reading the FCRA disclosure. Quite the opposite, the evidence is one-sided and suggests that she was not confused, she wanted a job, and she understood that she would need to authorize Barnes & Noble to obtain a background report if she wished to be considered for a job. There is not a scintilla of evidence that Hebert would *not* have signed the authorization, confused or not. Moreover, there is not a scintilla of evidence identified by Hebert in her own compilation of evidence: Plaintiff's Separate Statement of Undisputed Facts in Opposition to Defendant Barnes & Noble, Inc.'s Motion for Summary Judgment ("P's Undisputed Facts"). (Dkt. #33-2 filed 12-30-19.) Among the 121 evidence-based facts identified by Hebert, none are about her experiences, whether she was confused, or whether she would have signed the background report authorization if she were not confused. In short, there is no evidence that Hebert was actually harmed by Barnes & Noble's technical violation of the stand-alone provision of 15 U.S.C. §681b(b)(2)(A)(i).

      It is undisputed that Barnes & Noble used the technically deficient disclosure form from 2016 to 2018 and 27,000 job applicants were given the form during that time. P's Undisputed Facts at 113. It is also undisputed that during that time there were no complaints made to Barnes & Noble regarding the extraneous language on the FCRA disclosure form. P's Response at 41. Moreover, nowhere in her opposition brief to the motion for summary judgment does Hebert argue that she was actually harmed. Nowhere

to be found in the 198-page declaration and exhibits offered in opposition to the motion for summary judgment, is a declaration, affidavit, or deposition transcript by Hebert. See Declaration of Peter R. Dion-Kindem in Opposition to Defendant's Motion for Summary Judgment, (Dkt. 33-1 filed 12-30-19). Her argument is focused entirely on the purported willfulness of the FCRA violation.

"[A]lthough well-pleaded allegations are enough at the motion-to-dismiss stage, they are insufficient to establish standing at the summary-judgment stage. 'In response to a summary judgment motion, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true.' In reviewing standing *sua sponte* in the context of cross-motions for summary judgment, it is appropriate to apply the more lenient standard that takes the *plaintiffs'* evidence as true and then asks whether a reasonable trier of fact could find Article III standing." *Sierra Club v. Trump*, 2020 WL 3478900, at *21 (9th Cir. June 26, 2020) (Collins, J., dissenting) (emphasis in original) (citations omitted). Taking Hebert's evidence as true, there still lacks a basis for finding an actual injury. Without actual injury, Article III standing is lacking. *See e.g., Noble v. Nevada Checker Cab Corp.*, 726 F. App'x 582, 583 (9th Cir. 2018) ("Citing *Spokeo*, we held [in a FCRA case] that the plaintiff had not alleged a concrete injury sufficient to warrant Article III standing.").

If there is no Article III standing at the summary judgment stage, there is no case or controversy. Since this case was originally removed from state court, the proper procedure is not to grant summary judgment, but to remand the case to state court. "[A] removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c)." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016); *see also Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 n. 6 (9th Cir. 2018) ("As a general rule, if the district court is confronted with an Article III standing problem in a removed case – whether the claims at issue are state or federal – the proper course is to remand for adjudication in state court."). Barnes & Noble, as the party that removed

the case to federal court, also bears the continuing burden of establishing plaintiff's Article III standing. *See Lujan,* 504 U.S. at 561; *Garcia v. Kahala Brands, Ltd.*, 2020 WL 256518, *1 (C.D. Cal. 2020) ("Defendant, as the party asserting federal jurisdiction, bear the burden of establishing Plaintiffs' Article III standing."). However, just as Hebert's evidence fails to evidence an actual injury, Barnes & Noble's evidence also fails to provide evidence of Hebert's actual injury. Rather than speaking to Hebert's Article III standing, Barnes & Noble spends all of its time proving that its FCRA technical violation was accidental rather than willful and requesting summary judgment.

Rendering summary judgment in the absence of evidence of a plaintiff's actual injury would be error. Instead, remand is required.

> In an ordinary removal case, 'if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded.' No motion, timely or otherwise, is necessary: ultimate responsibility to ensure jurisdiction lies with the district court. Moreover, the district court generally *must* remand the case to state court, rather than dismiss it. Remand is the correct remedy because a failure of federal subject-matter jurisdiction means only that the *federal* courts have no power to adjudicate the matter. State courts are not bound by the constraints of Article III.

*Polo,* 833 F.3d at 1196 (citations omitted); *see also Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1258 (9th Cir. 1997) ("Upon determining that it lacked subject matter jurisdiction, the district court was required to remand Bruns' claims."). Accordingly, this action must be remanded to state court. *See e.g., Keim v. Trader Joe's Co.*, 2020 WL 564120, at *3 (C.D. Cal. Feb. 5, 2020) ("The Ninth Circuit was clear in *Polo*: 'a removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c).' This result makes sense because once the Court determines that it lacks Article III standing, any ruling on the merits would move the Court beyond its constitutional reach. Since the California Constitution does not contain a 'case or controversy' requirement like the one in the Federal Constitution, Plaintiff may fare better in state court."); *Peskett v. Designer Brands, Inc.*, 2020 WL 2519887 at *3 (C.D.

Cal. May 18, 2020) (any doubt regarding the existence of subject matter jurisdiction must be resolved in favor of remanding the action to state court).

## CONCLUSION

This case is hereby remanded to the Superior Court of the County of San Diego for further proceedings.

**IT IS SO ORDERED.**

Dated: July 13, 2020

_____
Hon. Roger T. Benitez
United States District Judge